UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

KARENA LAPAN, individually and on behalf )
of all others similarly situated, )
                                     )
          Plaintiff, )
                                     )
                    v. )       CASE NO. 5:17 cv-130
                                       )
GREENSPOON MARDER P.A. )
                                       )
          Defendant. )
                                       )

## MOTION TO DISMISS

Defendant Greenspoon Marder, P.A. ("Greenspoon"), by and through its counsel, moves pursuant to Fed. R. Civ. P. Rule 12(b)(2) and (6) to dismiss Plaintiff's Complaint because it fails to state a legally sufficient claim and because the Court lacks personal jurisdiction over Greenspoon.

## MEMORANDUM OF LAW

This case arises from a statutory notice served by Defendant, a Florida-based law firm, in connection with the foreclosure of a timeshare owned by Plaintiff in Nevada.  In 2016, after Plaintiff became delinquent on the purchase loan for her timeshare, the security-holder elected to initiate a foreclosure sale of the timeshare.  Nevada's foreclosure laws require that, prior to sale, a Notice of Default and Election to Sell detailing the owner's delinquency must be filed in the public land records and then served on the owner by certified mail.  Defendant did precisely that.  Plaintiff does not contend that Defendant violated the requirements of Nevada law in its handling of her foreclosure.  Rather, Plaintiff complains only that the Notice—which was accompanied by an exhibit identifying all of the properties being foreclosed in the proceeding, along with the owners and amounts owed—disclosed her debt to third parties, allegedly violating the Fair Debt Collection Practices Act ("FDCPA") and Vermont's Consumer Protection Act ("VCPA").

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

Plaintiff's default on her loan triggered a process that required, by its very operation, the public disclosure of her debt; unsurprisingly, the law does not afford a remedy under these circumstances. The FDCPA, as interpreted by courts within and outside of this Circuit, generally does not apply to the conduct of proceedings to foreclose on a security. Nor is there any basis under the FDCPA or VCPA to impose liability for disclosures that comply with—and, indeed, are required by—state foreclosure laws. Plaintiff's Complaint thus fails to state any legally sufficient claim. And, even if the allegations of the Complaint were to state valid claims, the Court does not have jurisdiction to adjudicate those claims: Greenspoon lacks any sustained presence in this forum, and the injury Plaintiff complains of—disclosure of her debt to third parties, all of whom reside out of state—did not occur in this forum or arise in any direct fashion from the communications Greenspoon mailed to Plaintiff at her Vermont residence. For these reasons, Defendant Greenspoon requests that the Court grant its motion and dismiss Plaintiff's Complaint.

## Background

### A.   Nevada's Nonjudicial Foreclosure Procedures

The foreclosure in this case took place under Nevada law. When a debtor defaults on a note secured by property pursuant to a deed of trust, as here, the holder of the deed of trust has two options in Nevada: the holder can either (a) initiate a judicial process for foreclosure or (b) pursue a nonjudicial foreclosure via trustee sale, which is governed by Chapter 107 of the Nevada Revised Statutes. *See Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 254 (Nev. 2012). Here, the holder elected to pursue the latter route.

The process begins with the trustee's execution of a notice of the breach and election to sell the security property to satisfy the debtor's obligation. Nev. Rev. Stat. § 107.080(2)(b). The

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

notice must specifically "describe the deficiency in performance or payment," and may include a notice of intent to declare the entire unpaid balance due (to the extent acceleration is permitted under the note). *Id.*, § 107.080(3).  The trustee must file the notice in the public land records where the subject property is located and serve a copy by registered or certified mail on any person holding title of record to the property. *Id.*, § 107.080(2)(b), (3).  The owner has 35 days from the date upon which the notice is recorded and mailed to make good the deficiency. *Id.*, § 107.080(3).  If the delinquency is not cured,  the sale nevertheless cannot occur until at least three months have passed from the date of recording the notice, and then only after the trustee has given notice of the time and place of the sale by, among other things, mailing a notice to the owner. *Id.*, § 107.080(2)(d), (4).

Completion of a nonjudicial foreclosure sale vests title in the purchaser. *Id.*, § 107.080(5).  If, however, the trustee fails to substantially comply with the required procedures, the debtor may seek to void the sale by initiating court action in the county where the property is located. *Id.*  Such an action must be commenced within 30 days of the date the deed of sale is recorded or, in cases involving defects in notice, 90 days from the date of sale. *Id.*, § 107.080(5)(b), (6).

**B.      The LaPan Foreclosure**

On July 13, 2016, Defendant Greenspoon filed in the land records of Clark County, Nevada a Notice of Default and Election to Sell Under Deed of Trust ("Notice of Default") relating to fifteen timeshares at the Grandview at Las Vegas resort. *See* Exh. A, Notice of

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

3

Default.[1]  An exhibit to the Notice of Default identified the owners, the specific unit and week, and the date and amount of the default for each of the fifteen timeshares to be sold in the proceeding.  *Id.*  Among those to be sold was a timeshare purchased by Plaintiff LaPan and Francis Brooks in 2013, the purchase loan for which had been in default since May 2014.  *Id.*; Complaint, ¶ 18.  The Notice of Default stated that the trustee had elected to sell the subject timeshares and that, if the debtors' respective obligations were not brought current within the 35 days provided by statute, the trustee would accelerate all sums due and proceed with sale as outlined in Section 170.080 of the Nevada Revised Statutes.  *See* Exh. A.

On or around July 20, 2016, Greenspoon mailed a copy of the Notice of Default to Plaintiff.  Complaint, ¶ 11.  The original notice erroneously indicated the amount due from Plaintiff to be $41,805.  *See* Exh. A; Complaint, ¶ 14.  Plaintiff and Mr. Brooks wrote to Greenspoon and requested validation of the debt, along with copies of the underlying documentation supporting the debt obligation and various other items.  Complaint, ¶ 15 and Exh. 2.  Greenspoon responded on August 13, 2016 with a letter providing an accurate statement of Plaintiff's account—showing the amount owing to be $7,849, and not $41,805[2]—and the underlying promissory note, loan application, and deed of trust.  *See* Exh. B.[3]

In October 2016, Greenspoon issued a Notice of Trustee's Sale ("Notice of Sale"), as required by statute.  *See* Complaint, ¶ 17; Exh. C, Notice of Sale.  The Notice of Sale indicated

---

[1] A court may properly consider on a Rule 12(b)(6) motion matters of public record, *see Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998), including documents properly recorded in public land records, *see Awan v. Ashcroft*, No. 09-CV-1653 JS AKT, 2010 WL 3924849, at *2 (E.D.N.Y. Sept. 28, 2010).  Additionally, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  As Plaintiff has included portions of the Notice of Default as exhibits to her Complaint, the Court may rely upon the complete copy in ruling on this motion without converting it to a motion for summary judgment.

[2] The erroneous figure included in the original exhibit was apparently the result of a clerical error.

[3] Exhibit B is a more complete copy of Greenspoon's letter to Plaintiff and Mr. Brooks, a portion of which was appended by Plaintiff as Exhibit 3 to the Complaint.  Greenspoon has omitted only the copies of the loan applications, which contain personal information of no relevance to this Motion.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

4

that a sale by auction of the fifteen timeshares would take place on November 9, 2016 at 1 p.m., and again attached an exhibit identifying the timeshares, owners, and obligations at issue. *See* Exh. C. The exhibit identified the balance due on Plaintiff's note to be $7,849. *Id.*

<u>Argument</u>

A.   **The Complaint Fails to State a Claim Under the FDCPA Because the Notice at Issue Was Not Related to Collection of a Debt, but Rather to the Enforcement of a Security Interest.**

Plaintiff's primary claim in this lawsuit asserts a violation of the FDCPA's prohibitions on disclosing debtor information to third parties. Those prohibitions apply, by their express terms, only to "debt collectors . . . in connection with the collection of any debt." *See* 15 U.S.C. §§ 1692c(b), 1692d. Here, the notice at issue was prepared and served in the context of a foreclosure action to enforce a security interest. The majority of courts within this circuit have held that conduct in connection with an action to enforce a security interest, without any demand for payment, does not constitute "the collection of . . . debt" and is not governed by the FDCPA. Plaintiff thus fails to state a claim under the FDCPA.

The Complaint alleges the violation of two distinct sections of the FDCPA. First, Plaintiff asserts that Greenspoon violated 15 U.S.C. § 1692c(b), which provides that, subject to certain exceptions, "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency . . . , the creditor, the attorney of the creditor, or the attorney of the debt collector." *See* Complaint, ¶ 49. Second, Plaintiff alleges that Greenspoon violated 15 U.S.C. § 1692d, which prohibits a "debt collector [from] engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *See* Complaint, ¶ 51. Section 1692d defines such harassing conduct to include the "publication of a list of consumers who allegedly refuse to pay debts." 15 U.S.C. § 1692d(3).

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

The FDCPA does not expressly lay out when conduct will be deemed to be "in connection with the collection of a debt" for purposes of §§ 1692c(b) and 1692d.  However, the statute defines "debt collector" in a manner that confirms that those provisions do not apply to efforts to enforce a security interest.  For purposes of the FDCPA, the term "debt collector"

> means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . *For the purpose of section 1692f(6) of this title*, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C.A. § 1692a(6) (emphasis added).  Given its plain meaning, the definition indicates that an entity using interstate commerce or mails to enforce security interests is a "debt collector" only for the purpose of one specific provision of the FDCPA relating to recovery of property, § 1692f(6).  That provision prohibits taking or threatening nonjudicial action to effect the dispossession of property under certain circumstances, and Plaintiff has not alleged—nor would she have any basis to do so—that Greenspoon violated § 1692f(6)'s prohibitions here.  Consistent with the familiar canon of construction *expressio unius est exclusion alterius*, it must be presumed that Congress, in enlarging the definition of "debt collector" to include an entity seeking to enforce a security interest in one specific, narrow context, did not intend the term to have that meaning under other provisions of the FDCPA.  *See United States v. Rivard*, 127 F. Supp. 2d 512, 515 (D. Vt. 2000) (applying maxim of *expressio unius* to conclude that Congress's grant of authority to toll supervised release in one specific context indicated that court lacked authority to toll in other contexts).

While the Second Circuit has yet to directly address the application of the FDCPA to foreclosure proceedings, *see, e.g.*, *Boyd v. J.E. Robert Co., Inc.*, 765 F.3d 123, 125 (2d Cir. 2014) (declining to reach issue), the "majority of courts in this Circuit that have considered this

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

issue have held that the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA." *Hill v. DLJ Mortg. Capital, Inc.,* No. 15CV3083SJFAYS, 2016 WL 5818540, at *7 (E.D.N.Y. Oct. 5, 2016) (collecting cases) (citation and quotation marks omitted), *aff'd*, No. 16-3685-CV, 2017 WL 1732114 (2d Cir. May 3, 2017).  That conclusion conforms as well to the decisions of a large number of federal courts outside of this Circuit that have examined the FDCPA's applicability in the context of foreclosure.  *See Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 311, 325 (D. Conn. 2012) ("Although there is a split of authority on this issue, it appears that a majority of courts who have addressed this question have also concluded that foreclosing on a mortgage does not qualify as debt collection activity for purposes of the FDCPA."); *see also, e.g.*, *Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 572 (9th Cir. 2016) (holding that sending foreclosure notices in connection with trustee foreclosure sale constituted "'the enforcement of [a] security interest' rather than 'debt collection'" within the meaning of the FDCPA); *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (concluding that "enforcement of a security interest through the foreclosure process is not debt collection for purposes of the Act"); *Regas v. Freemont Investments & Loan*, No. 3:10-CV-0366-LRH-VPC, 2010 WL 5178029, at *2 (D. Nev. Dec. 14, 2010) ("It is well established that nonjudicial foreclosures are not an attempt to collect a debt under the Fair Debt Collection Practice Act and similar state statutes."); *Gray v. Four Oak Ct. Ass'n, Inc.*, 580 F. Supp. 2d 883, 888 (D. Minn. 2008) ("[T]he enforcement of a security interest, including a lien foreclosure, does not constitute the 'collection of any debt.'"); *Beadle v. Haughey*, No. CIV.04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

of the FDCPA."); *but see Glazer v. Chase Home Fin. LLC*, 704 F.3d 453 (6th Cir. 2013) (holding that mortgage foreclosure constitutes debt collection).

Here, the two documents mailed to Plaintiff—the Notice of Default and Notice of Sale—were required elements of a nonjudicial foreclosure under Nevada law.  The Notice of Default did not demand payment of Plaintiff's debt.  *See* Exh. A.  Rather, the Notice simply stated the Trustee's intent to sell the property, and advised, as required under Section 107.080 of the Nevada Revised Statutes, that all sums due under the promissory note would be accelerated and the property would be sold if Plaintiff's obligation were not brought current within 35 days.  *See* Nev. Rev. Stat. § 107.080(3).  Because the purpose of the nonjudicial foreclosure proceeding was not to collect upon the debt from Plaintiff herself, but to enforce a security interest following default, Greenspoon's issuance of the Notices and attached exhibit detailing Plaintiff's debt was not governed by the FDCPA.

The Complaint notes, correctly, that the Notice of Default was accompanied by a boilerplate insert titled "FAIR DEBT COLLECTION PRACTICES ACT DISCLOSURE."  *See* Complaint, ¶ 11; *see also* Exh. A.  The insert indicates that the communication constitutes an effort to collect upon a debt, and sets forth various provisions required by the FDCPA; it does not contain any suggestion that Defendant was seeking a recovery from Plaintiff personally.  The inclusion of the insert was unnecessary, and, more to the point, does not transform the issuance of notices required under Nevada's nonjudicial foreclosure process into debt collection activities governed by the FDCPA.[4]  In *Derisme*, a case from the District of Connecticut, the defendant law firm's foreclosure-related correspondence likewise "contained certain FDCPA compliant disclaimers and . . . notices," but the court there reasoned that the fact that defendant "took

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

---

[4] While unnecessary, the insert was clearly born out of caution and a good-faith attempt to avoid violation of any applicable law.  It hardly strains the imagination to envision that if Greenspoon had *not* included the FDCPA Disclosure, Plaintiff would have included a claim for that alleged failure as well.

{B1732781.1 08098-0013}

8

certain precautions to comply with the FDCPA [was] not dispositive" as to whether its actions were subject to the FDCPA. *Derisme*, 880 F. Supp. 2d at 373 ("Here it was reasonable for [defendant] to err on the side of caution and this Court will not penalize [defendant] for taking such precautions."). Various other courts have reached the same conclusion. *See Stamper v. Wilson & Assocs., P.L.L.C.*, No. 3:09-CV-270, 2010 WL 1408585, at \*9 (E.D. Tenn. Mar. 31, 2010) ("The fact that FDCPA disclaimers were sent in connection with a non-judicial foreclosure proceeding does not automatically transform the defendants into 'debt collectors.'"); *Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1143 (D. Utah 2008) (notwithstanding defendant attorney's inclusion of FDCPA notice with Notice of Default in initiating nonjudicial foreclosure, court concluded that only the security enforcement provisions of the FDCPA applied where the notice did not indicate that the defendant "was seeking recovery against [plaintiff] personally"); *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, No. CIV. 06-3103 RHK/AJB, 2007 WL 2695795, at \*5 (D. Minn. Sept. 12, 2007) (holding that foreclosure-related communications did not fall subject to FDCPA, notwithstanding the fact that defendant "held itself out as a 'debt collector' in its letters and notices by including FDCPA disclaimers"); *Beadle*, 2005 WL 300060 (foreclosure activities not covered by FDCPA even though defendant's letters included FDCPA warnings).

Accordingly, because Defendant Greenspoon's conduct in initiating the nonjudicial foreclosure process and, specifically, recording and mailing the required Notice of Default was an effort to enforce a security interest, it does not constitute conduct "in connection with the collection of any debt" under the FDCPA. Plaintiff's FDCPA claim should therefore be dismissed.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

9

**B.    The Disclosure of Plaintiff's Debt Was Required by Nevada Law and Is Not Actionable under the FDCPA or VCPA.**

Both counts of Plaintiff's Complaint allege that Defendant Greenspoon violated the law by disclosing to third parties Plaintiff's unpaid debt.  As discussed, however, the public disclosure of a debt is a necessary incident to Nevada's nonjudicial foreclosure process: the first step in a nonjudicial foreclosure is to record a Notice of Default and Election to Sell in the public land records specifically detailing the nature of the delinquency.  *See* Nev. Rev. Stat. § 107.080(2)(b), (3).  Here, because the foreclosure proceeding involved multiple properties, the Notice was subsequently sent to other delinquent property owners.  But the document was already public at that point—and, in any event, what was disclosed was no more than could have been learned by consulting the land records[5] or appearing at the public foreclosure sale.  The disclosure of information required by a state foreclosure process simply cannot constitute a violation of either the VCPA or the FDCPA.

Plaintiff's VCPA claim rests on Section 104.03(c) of the Consumer Protection regulations.  That provisions prohibits "[t]he disclosure, publication, or communication of any information relating to a consumer debt to any person  . . . , other than through proper legal action, process or proceeding."  Vt. Admin. Code 3-2-103: CP 104.03(c).  Here, of course, the publication and disclosure of Plaintiff's consumer debt information did occur in the context of a "proper legal process"—i.e., a nonjudicial foreclosure.  Thus, under the express terms of the regulation, Defendant's disclosure did not violate the VCPA.

Similarly, courts have held that publication of consumer debt information required under a state foreclosure process does not constitute a violation of the FDCPA.  *See, e.g.*, *Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1143 (D. Utah 2008) (recording of Notice of Default in public

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

---

[5] The Clark County Land Records are online and publicly accessible.  *See* http://www.clarkcountynv.gov/assessor/Pages/RecordSearch.aspx.

{B1732781.1 08098-0013}

land records, as required by Utah's nonjudicial foreclosure procedure, did not constitute

impermissible communication with third parties about plaintiff's debt); *Chomilo v. Shapiro,*

*Nordmeyer & Zielke, LLP*, No. CIV. 06-3103 RHK/AJB, 2007 WL 2695795, at \*1-2, \*5 (D.

Minn. Sept. 12, 2007) (disclosure of plaintiff's debt required by nonjudicial foreclosure

process—including recording in land records, serving notice on plaintiff's tenants residing at

property, and publishing notice in newspaper identifying debtor, location of property, principal

amount secured, and amount claimed to be due—did not violate FDCPA).  Indeed, as the Ninth

Circuit has observed, the tension between the requirements of the FDCPA and the disclosures

and procedures required under state foreclosure regimes is one of the factors that weighs against

applying the FCDPA to foreclosure actions:

> Holding trustees liable under the FDCPA would subject them to obligations that
> would frustrate their ability to comply with the California statutes governing non-
> judicial foreclosure.  . . . For example, the FDCPA prohibits debt collectors from
> communicating with third parties about the debt absent consent from the debtor.
> But California law requires the trustee to announce all trustee's sales in a
> newspaper and mail the notice of default to various third parties.  The FDCPA
> also prohibits debt collectors from directly communicating with debtors if the
> debt collector knows that the debtor is represented by counsel. California law
> requires the trustee to mail the notices of default and sale directly to the borrower,
> and makes no exception for borrowers who are represented by counsel. In both of
> these cases, a trustee could not comply with California law without violating the
> FDCPA.

*Vien-Phuong Thi Ho v. ReconTrust Co., NA*, 858 F.3d 568, 575 (9th Cir. 2016) (citation omitted)

(finding FDCPA inapplicable to foreclosure efforts and noting that, because "[f]oreclosure is a

traditional area of state concern," the court was "especially reluctant to accept an interpretation

of a federal statute that would generate conflict between state and federal law").

    In short, allowing Plaintiff to proceed on the theory that Defendant Greenspoon's

disclosures in the foreclosure proceeding violated the FDCPA and VCPA would set up a direct

conflict between those laws and Nevada's foreclosure process.  Defendant Greenspoon complied

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

11

with the requisite procedures under Nevada law, and the FDCPA and VCPA do not, and should

not, create liability for simply complying with governing state laws.

### C.   The VCPA Claim Fails for Lack of a Cognizable Injury Caused by the Disclosure of Plaintiff's Debt.

Plaintiff's claim under the VCPA also fails because the Complaint does not plausibly

allege any cognizable injury cased by a violation of the VCPA.

To state a viable private claim under the VCPA, a plaintiff must allege not only an unfair

or deceptive act by the defendant, but also "(1) reliance on a deceptive act in contracting for

goods or services or (2) damages or injury from an unfair or deceptive act." *Dernier v. Mortg.*

*Network, Inc.*, 87 A.3d 465, 481 (Vt. 2013). Here, Defendant Greenspoon's alleged conduct

long post-dated the loan at issue, so there can be no claim that Plaintiff relied upon any deceptive

act in contracting for goods or services. Plaintiff's VCPA claim thus falls, if at all, under the

second prong, requiring plausible allegations of an injury caused by Defendant's conduct in

order to state a legally sufficient claim. *See id.* (where facts showed no possible reliance on a

deceptive act, VCPA claim required plausible allegation of damages or injury).

Such an injury cannot be found amidst Plaintiff's allegations. Nowhere does the

Complaint allege that the disclosure of Plaintiff's information caused Plaintiff any specific

pecuniary injury or damage. Nor is there any allegation that the disclosure caused Plaintiff

embarrassment or exposed her to shame or censure within her community. Rather, Plaintiff

appears to claim as her sole injury the alleged invasion of her privacy interests. *See* Complaint,

¶¶ 26-29, 63. Even if the invasion of privacy alone, with no plausible allegation of other

concrete harm, could establish an injury cognizable under the VCPA—a question on which there

does not appear to be any law in Vermont—the facts here do not make out an injury based on

invasion of privacy. When she secured a loan to purchase her timeshare, Plaintiff executed a

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

12

Deed of Trust that expressly conveyed a power of sale to the trustee.  *See* Exh. C.  The sole

process by which the power of sale under a deed of trust may be exercised requires public

disclosure of her debt—and thus, Plaintiff granted the trustee (and, by extension, the trustee's

attorneys) a right to make such a disclosure.  To put it simply, a disclosure to which Plaintiff

implicitly consented cannot constitute a legally cognizable injury.  *Cf. Staruski v. Contl. Tel. Co.

of Vt.*, 581 A.2d 266, 272 (Vt. 1990) (invasion of privacy requires lack of consent).

Because the Complaint does not allege an injury caused by a violation of the VCPA, the

claim should be dismissed.  *See Dernier*, 87 A.3d at 481 (affirming dismissal of VCPA claim

where plaintiff failed to plausibly allege injury or damages caused by defendant's letter

concerning foreclosure rights); *Lang McLaughry Spera Real Estate, LLC v. Hinsdale*, 35 A.3d

100, 112 (Vt. 2011) (claim for unfair debt collection practice under VCPA failed for lack of

cognizable injury or damages).

### D.    The Court Lacks Personal Jurisdiction over Greenspoon.

Plaintiff's Complaint seeks to subject a Florida-based Defendant to suit for claims arising

from disclosures that occurred in the context of a Nevada foreclosure action.  The only nexus

with this forum is the fact that Plaintiff resides here and that Defendant Greenspoon mailed three

letters to Plaintiff at her residence.  That is not enough.  Because there is no adequate basis for

this Court to exert personal jurisdiction over Defendant Greenspoon, it should dismiss Plaintiff's

suit under Rule 12(b)(2).

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of

demonstrating sufficient contacts between the defendant and the forum state to justify the

exercise of personal jurisdiction over the defendant.  *See Bank Brussels Lambert v. Fiddler

Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).  The jurisdictional analysis comes in

two parts: first, the Court must evaluate whether the state's long-arm statute permits jurisdiction,

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

and second, if so, the court must determine whether the exercise of jurisdiction comports with the Due Process clause of the United States Constitution.  *See In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d 30, 37-38 (2d Cir. 2014).  Because Vermont's long-arm statute reaches to the full extent permitted by the Constitution, *id.* at 38 (citing 12 V.S.A. § 913(b)), the dispositive question here is whether the exercise of jurisdiction over Defendant Greenspoon would satisfy the requirements of due process.  *Id.*

The touchstone for determining where personal jurisdiction over a defendant will comport with due process is the existence of "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 923 (2011) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).  If a foreign defendant is shown to have "continuous and systematic" contacts with the forum state such that the defendant is essentially at home there, the court may exercise general jurisdiction over the defendant to hear any and all claims.  *Id.* at 919 (*quoting Int'l Shoe*, 326 U.S. at 317).  A lesser quantum of contacts will suffice to support the exercise of specific jurisdiction, provided the case arises from the defendant's contacts with the forum state and the plaintiff can demonstrate "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  Importantly, the defendant's relation to the state "must arise out of contacts that the 'defendant *himself*" creates with the forum state," *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), and not the "unilateral activity of another party or a third person."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *see also Hanson*, 357 U.S. at

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

14

253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

Applying those standards, the facts do not support a finding that Defendant Greenspoon is subject to personal jurisdiction in Vermont—and, even if there were a basis for specific jurisdiction over Plaintiff's claim, the Court clearly lacks jurisdiction over any members of the putative class who do not reside in Vermont and have not had any contact with Greenspoon in Vermont.

### 1.    *Greenspoon is not subject to general jurisdiction in Vermont.*

The Supreme Court's 2014 decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) set a very high bar for establishing general jurisdiction over a corporate defendant.  Following *Daimler*, "except in a truly 'exceptional' case, a corporate defendant may be treated as 'essentially at home' only where it is incorporated or maintains its principal place of business." *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:16-CV-35, 2016 WL 7174646, at *4 (D. Vt. Dec. 7, 2016) (quoting *Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 627 (2d Cir. 2016)).  This is not such a case.  Defendant is a Florida-based law firm, and is neither incorporated in nor maintains its principal place of business in Vermont.  *See* Exh. D, Declaration of Amanda L. Chapman, Esq. ("Chapman Declaration"), ¶ 2.  While Defendant has offices in states other than Florida, it lacks any business location or presence in Vermont.  *Id.*, ¶ 3.  It does not actively solicit business or advertise in Vermont, nor is it registered to do business in Vermont, *id.*, ¶ 4.

There can be no question that Defendant's extremely sparse contacts with Vermont fall short of the "exceptional" contacts that would be necessary to establish that it is "essentially at

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

15

home" here.  *See Bertolini-Mier*, 2016 WL 7174646, at *5 (holding that even "substantial and

longstanding" contacts did not justify finding of general jurisdiction).

### 2.  *Greenspoon is not subject to specific jurisdiction in Vermont.*

The determination of "whether a forum State may assert specific jurisdiction over a

nonresident defendant focuses on the relationship among the defendant, the forum, and the

litigation."  *Walden*, 134 S. Ct. at 1121 (citation and quotation marks omitted).  "In order for a

court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the

forum and the underlying controversy, principally, [an] activity or an occurrence that takes place

in the forum State.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781

(2017) (quoting *Goodyear*, 564 U.S. at 919).  The inquiry focuses on the *defendant*'s contacts,

for the "[d]ue process limits on the State's adjudicative authority principally protect the liberty of

the nonresident defendant—not the convenience of plaintiffs or third parties."  *Walden*, 134 S.

Ct. at 1122.  Consistent with this, the "plaintiff cannot be the only link between the defendant

and the forum."  *Id.*

The relevant contacts between Defendant Greenspoon and Vermont consist, in their

entirety, of three letters sent between July and October 2016: the Notice of Default, the response

to Plaintiff's request to validate the debt, and the Notice of Sale.  Greenspoon is not alleged to

have had any other contact with Plaintiff by mail, telephone, or electronic means.  Those

minimal contacts cannot support the exercise of specific jurisdiction, for the simple reason that

Plaintiff's claims do not arise from Defendant's communications with her.

It is true that, in the context of FDCPA suits, courts have sometimes found specific

jurisdiction based on collection communications with a plaintiff in the forum state, on the theory

that the FDCPA claims arise directly from the communications themselves.  *See, e.g.*, *Eades v.*

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

*Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015); *but see Krambeer v. Eisenberg*, 923 F. Supp. 1170, 1175–76 (D. Minn. 1996) (mailing of single debt collection letter insufficient to establish specific jurisdiction).  The exercise of specific jurisdiction in an FDCPA suit based on mailings to the plaintiff makes some sense where the gravamen of the complaint is that the nature and content of the defendant's contacts with the plaintiff violated the FDCPA.  *See Eades*, 799 F.3d at 168-69, 173 (finding specific jurisdiction where plaintiff alleged that defendant violated FDCPA by making improper threats and false, deceptive, and misleading statements in communications.).  This case is different.  Here, the complaint alleges that Defendant Greenspoon violated the FDCPA not in its communications with *Plaintiff*, but by making disclosures to third parties.  Those disclosures uniformly occurred outside of Vermont.  The public filing of the Notice of Default took place in Nevada, and none of the other individuals who received a copy of the Notice of Default resides in Vermont.  Chapman Declaration, ¶¶ 6-8.  There is thus no basis to find that, in connection with the allegedly improper disclosures to third parties, Plaintiff's injury arose from any conduct purposefully directed by Defendant at Vermont.  *Cf. Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) (holding that Virginia court lacked specific jurisdiction in suit arising from allegedly defamatory statements about warden of Virginia prison made in article published by Connecticut newspaper, where there was no evidence publisher intended to direct content to Virginia audience).

Moreover, even if Plaintiff's claims did arise from the letters Defendant sent to her in Vermont, dismissal would be appropriate because the exercise of personal jurisdiction over the Defendant Greenspoon would not comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted); *see also RLB & Assocs., Ltd. v. Aspen Med. Pty.*, No. 2:15-CV-123, 2016 WL 344925,

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

17

at *7 (D. Vt. Jan. 27, 2016) (holding that interests of fair play and substantial justice would warrant dismissing case even if minimum contacts were present).  In weighing whether jurisdiction is consistent with notions of fair play and substantial justice, courts evaluate the following factors:  (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

The balance of these factors weighs sharply against exercise of jurisdiction in this suit. Again, Plaintiff's claims arise from notices issued in a Nevada foreclosure proceeding; to the extent that there was a conflict between Defendant's practices in carrying out the foreclosure and the requirements of federal law, Nevada has a much greater interest in adjudicating the case and addressing the conflict.  To be sure, Vermont may have some interest in ensuring that its residents are treated fairly in foreign foreclosure proceedings.  But Nevada has an equal or greater interest in protecting the rights of individuals who own property in that state—and interstate comity concerns suggest that Nevada courts are the more appropriate forum for vindicating those interests.  Moreover, Defendant is a foreign corporation with no employees, property, or presence in Vermont, and thus will inevitably be burdened by the litigation of a lawsuit here.  *See Hyperkinetics Corp. v. Flotec, Inc.*, No. 1:03cv33, 2003 WL 25278086, at *5 (D. Vt. Sept. 25, 2003) ("Because it is based in Indiana, the defendant will certainly incur some burden litigating in this state . . . . At best, the defendant's contacts with Vermont are indirect, minimal, and insubstantial."); *see also Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 561 (9th Cir.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

1995) ("[T]he law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden.").

The bottom line is that this case involves a foreclosure proceeding in Nevada, concerning Nevada property and under Nevada law, handled by a law firm with no presence in Vermont.  It simply cannot be the case that Defendant, in mailing notices required under Nevada's laws, purposefully availed itself of the privilege of doing business in Vermont such that it could reasonably foresee being haled into court in this forum.  *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  There is no valid basis upon which the Court may exercise jurisdiction over Defendant, and the suit should be dismissed on that basis.

> ### 3. *Even if Greenspoon were subject to specific jurisdiction for LaPan's claim, it would not be subject to jurisdiction with respect to any claims by out-of-state members of the putative class.*

Finally, even if there were specific jurisdiction over Plaintiff LaPan's claims against Defendant, due process will bar the exercise of jurisdiction over any members of the putative class who reside outside of Vermont and had no interactions with Defendant in Vermont.  In *Bristol-Myers Squibb,* the Supreme Court recently held that Fourteenth Amendment due process principles bar a state court from exercising specific jurisdiction over class members whose claims do not arise from a defendant's conduct in the forum state.  *See Bristol-Myers Squibb,* 137 S. Ct. at 1781 ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the defendant's prescription drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.").  The Court left open the question whether the same principle would apply under the Fifth Amendment in a class action in federal court.  *See id.* at 1784.  Because the Second Circuit has repeatedly emphasized that the due process analysis under the Fifth and Fourteenth

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}

19

Amendments is congruent,[6] *see Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016), there is no reason to believe the rule adopted in *Bristol-Myers Squibb* would not apply in this case.  Any claims by members of the putative class having no nexus with Vermont are thus barred.

### Conclusion

This suit seeks to have the Court to apply the laws of Vermont and a federal debt collection statute to a Nevada foreclosure process.  To do so would be a considerable overreach.  The laws under which Plaintiff sues do not apply to disclosures made under Nevada law—and, even if they did, this is not the appropriate forum in which to adjudicate such claims.  For the reasons set forth above, Defendant Greenspoon respectfully requests that the Court dismiss the Complaint.

Dated at Burlington, Vermont this 30th day of August 2017.

DINSE, KNAPP & MCANDREW, P. C.

By      /s/ Justin B. Barnard
Karen McAndrew, Esq.
Justin B. Barnard, Esq.
209 Battery Street
Burlington, VT  05401
802-864-5751
kmcandrew@dinse.com
jbarnard@dinse.com

*Counsel for Defendant, Greenspoon Marder, P.A.*

---

[6] A chief difference in the analysis of personal jurisdiction in federal cases is that some courts have permitted examination of nationwide contacts, rather than contacts with the forum state, where the case involves claims under a federal statute that provides for nationwide service.  *See, e.g., S.E.C. v. Straub*, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) ("When the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process, however, the Fifth Amendment applies, and the Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").  Because the FDCPA does not authorize nationwide service, the difference is immaterial here.  *See Sarracco v. Ocwen Loan Servicing, LLC,* 220 F. Supp. 3d 346, 351 (E.D.N.Y. 2016).

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}                    20

## <u>CERTIFICATE OF SERVICE</u>

I, Justin B. Barnard, Esq., certify that on August 30, 2017, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system.  The CM/ECF system will provide service of such filing via Notice of Electronic Filing (NEF) to the following NEF parties:

Andrew B. Delaney, Esq.
andrew@martinassociateslaw.com

A copy of the foregoing has also been served upon the following parties by mailing a copy thereof via U.S. first class, postage prepaid mail, to counsel of record at:

None.

Dated at Burlington, Vermont this 30th day of August 2017.

DINSE, KNAPP & MCANDREW, P. C.

By ____/s/ Justin B. Barnard____
Karen McAndrew, Esq.
Justin B. Barnard, Esq.

Dinse,
Knapp & McAndrew, P.C.
209 Battery Street
P.O. Box 988
Burlington, VT
05402-0988
(802) 864-5751

{B1732781.1 08098-0013}