
UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

KARENA LAPAN, individually and on behalf
of all other similarly situated,

    Plaintiff,

v.

GREENSPOON MARDER P.A.,

    Defendant.

Case No. 5:17-cv-130

## **DECISION ON DEFENDANT'S MOTION TO DISMISS**
**(Doc. 8)**

Plaintiff Karena Lapan ("Lapan") alleges that Defendant Greenspoon Marder P.A. ("Greenspoon"), a law firm incorporated in Florida, violated the Fair Debt Collection Practices Act ("FDCPA") in the course of pursuing a non-judicial foreclosure on a Las Vegas timeshare by disclosing the details of a claimed debt to third parties. Lapan also alleges that Greenspoon's conduct violated the Vermont Consumer Fraud Act.

This matter came before the court on Thursday, January 11, 2018 for hearing on Greenspoon's Motion to Dismiss (Doc. 8). Attorneys Andrew Delaney of Martin & Associates, PC and Peter Holland of the Holland Law Firm, P.C. appeared for Lapan, and Attorney Justin Barnard of Dinse, Knapp & McAndrew P.C. appeared for Greenspoon. For the reasons set forth herein, the court denies the motion to dismiss.

### FACTS

The following facts are set forth in the Complaint, and the court accepts them as true and draws all reasonable inferences from them in favor of Lapan for the purposes of this motion to dismiss.

Lapan and another individual named Francis Brooks jointly purchased a timeshare in Las Vegas, and financed that purchase with a loan from Eldorado Resorts Corp., a Florida

corporation. On July 20, 2016, Greenspoon, a law firm representing Eldorado, sent Lapan a notice of default and election to sell under deed of trust. Greenspoon claimed that Lapan and Brooks had defaulted on the loan on May 19, 2014 and owed $41,805. This notice was issued pursuant to Nevada's non-judicial foreclosure law, which permits a sale of a security property by a trustee in satisfaction of a deficiency. The notice included the following language:

> Please be advised that in the event that your obligation is not brought current…within 35 days…ELT shall accelerate all sums due under the Note and shall proceed with the sale of the Property[.]

The notice was accompanied by a Fair Debt Collection Practices Act Disclosure, which stated "[t]his is a communication from a debt collector" and "THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT." The notice was also accompanied by a list of individuals with accounts in default relating to the same timeshare development. The list included names of borrowers, default dates, and amounts due.

Lapan responded to this communication on August 2, 2016 with a request for validation of the claimed debt. Greenspoon responded to this request on August 13, 2016 with a statement of Lapan's account, which showed a balance of $7,849. Greenspoon now admits that the amount in the original notice was an error.

In October 2016, Greenspoon sent Lapan a notice of trustee's sale indicating that the trustee's sale of the timeshare property would occur on November 9, 2016. This notice was accompanied by the same list of individual debtors that accompanied the notice of default, though Lapan's amount due had been corrected to $7,849.

Both the notice of default and the notice of trustee's sale were sent to other individuals with interests in the timeshare property who were also in default.

## ANALYSIS

Lapan claims that Greenspoon's mailing of the unredacted list of individuals in default to all of the timeshare owners on the list violated the FDCPA in two ways. First, it amounted to communication with a third party in connection with the collection of a debt, in violation of 15 U.S.C. § 1692c(b). Second, it amounted to publication of a list of consumers who allegedly refused to pay, in violation of 15 U.S.C. § 1692d(3). Lapan also claims that the same conduct violated the Vermont Consumer Fraud Act, 9 V.S.A. § 2451 et seq., and CVR-06-031-004, a

regulation thereunder prohibiting disclosure of information relating to debts. Lapan seeks certification of a class action, asserting that Greenspoon has a practice of mailing unredacted lists of individual debtors and that each individual whose identifying information was mailed to other debtors in this manner is situated similarly to her.

Greenspoon has moved to dismiss, arguing that this court lacks personal jurisdiction and that the Complaint fails to state a claim upon which relief can be granted. Greenspoon raises three principal challenges to the legal sufficiency of the allegations in the Complaint.

## I. Collection of Debt vs. Enforcement of Security Interest

First, Greenspoon argues that the communications at issue were not made "in connection with the collection of a debt" and were not within the ambit of 15 U.S.C. § 1692c(b), which provides:

> [A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

Rather, Greenspoon claims, the communications were made in the course of enforcing a security interest. Greenspoon argues that enforcement of a security interest is separate and distinct from collection of a debt. In support of this argument, Greenspoon points to 15 U.S.C. § 1692a(6), where the term "debt collector" is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. [] For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692f(6) provides that the following conduct is a per se unfair practice in violation of the FDCPA when performed by a debt collector:

> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.

Greenspoon urges the court to read these statutory provisions to mean that, by negative implication, enforcement of a security interest is not debt collection for purposes other than applying section 1692f(6). Greenspoon is not arguing that it is not a debt collector. Rather, it is using the definition of "debt collector" to argue that its actions in this case were not undertaken "in connection with the collection of a debt."

The court rejects this argument. To begin, the court does not read the specific enumeration of section 1692f(6) as defining the *exclusive* context in which the enforcement of security interests qualifies an entity as a debt collector. Reading sections 1692a(6) and 1692f(6) together makes it clear that section 1692f(6) was included in the FDCPA in order to prevent professional repossessors from claiming exemption from the FDCPA. The inclusion of their activities within the FDCPA is an expression of congressional intent to subject repossessors to the FDCPA. The provision accomplishes this by expanding the definition of debt collector to include repossessors. The enumeration of section 1692f(6) was included to close this obvious loophole. The court can find no reason to believe that this provision was ever intended be a comprehensive or exhaustive list. Accordingly, the court concludes that the negative implication canon *expressio unius est exclusio alterius* is not appropriately applied here.

The court instead looks to the plain and common understanding of the language in the statute, which provides that an entity that "regularly collects or attempts to collect, directly or indirectly, debts" is a debt collector. 15 U.S.C. § 1692a(6). A secured debt is still a debt. Enforcement of a security interest is the taking and selling of the property used to secure a debt and the use of the proceeds of the sale to satisfy the debt. This is, at the very least, *indirect* collection of a debt as that term is used in section 1692a(6). At a minimum, it comprises conduct "in connection with" the indirect collection of a debt. Any understanding of "debt collection" that excluded this would clash with the common understanding of what debt collection and enforcement of security interests are. The court sees no reason to adopt such a strained interpretation of the statute.

This reading of the statute is consistent with the court's obligation to construe the terms of the FDCPA, a remedial statute, in a way that effectuates its remedial purpose. *See Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) ("Because the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be

effectuated." (internal citation and quotation marks omitted)). In this case, the FDCPA's remedial purpose is best effectuated by reading its terms to have their natural and plain meaning, not by adherence to a hypertechnical analysis.

This reading of the statute is also consistent with the more persuasive authorities from across the country that have considered this question. There is no binding authority from the Second Circuit on the issue, and the circuits that have dealt with the question are divided.

The better-reasoned decisions have held that the enforcement of a security interest is a form of debt collection for purposes of the FDCPA. In *Wilson v. Draper and Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006), the Fourth Circuit held that foreclosure under a deed of trust was debt collection for FDCPA purposes, noting that the contrary conclusion "would create an enormous loophole in the Act immunizing any debt from coverage if that debt happened to be secured by a real property interest and foreclosure proceedings were used to collect the debt." The Sixth Circuit held likewise in *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013), noting that "*every* mortgage foreclosure, judicial or otherwise, is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e.*, forcing a settlement) or compulsion (*i.e.*, obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt)" (emphasis in original). *See also, e.g., Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) ("The fact that the [creditor] provided a lien to secure the [debtors'] debt does not change its character as a debt or turn [the debt collector's] communications to the [debtors] into something other than an effort to collect that debt."); *Alaska Trustee, LLC v. Ambridge*, 372 P.3d 207, 216–18 (Alaska 2016); *Shapiro & Meinhold v. Zartman*, 823 P.2d 120, 124 (Colo. 1992) (holding that judicial foreclosure was debt collection for FDCPA purposes).

The court has reviewed the contrary authorities and has not found any convincing rationale for exempting foreclosure from the same FDCPA requirements that apply to all other means of debt collection. These authorities have generally fallen short of faithfully construing the FDCPA liberally to effectuate its remedial purpose.

Decisions holding nonjudicial foreclosures not to be debt collection have frequently done so on the basis of the unavailability of a deficiency judgment. *See, e.g., Ho v. ReconTrust Co.*, 858 F.3d 568, 571–72 (9th Cir. 2017); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d

311, 326 (D. Conn. 2012). But the fact that the creditor's recovery is limited to the sale value of the collateral does not change the fundamental nature of the foreclosure process, which takes something of value from a debtor and uses it to satisfy a debt.

Some courts have also considered the presence or absence of an explicit demand for payment accompanying a nonjudicial foreclosure notice in determining whether such a notice constituted conduct in connection with debt collection. *See, e.g., Ho*, 858 F.3d at 574. Indeed, Greenspoon argues that the notices at issue here contained no explicit demands for repayment, and simply informed Lapan of the impending sale.

The notice of default sent to Lapan in this case stated that "in the event that your obligation is not brought current…within 35 days…ELT shall accelerate all sums due under the Note and shall proceed with the sale of the Property[.]" The court is satisfied that this language, construed in the light most favorable to Lapan's claims, did amount to an attempt to collect a debt. There is no meaningful distinction between a demand for repayment and a statement of the consequences for failure to make repayment. The expected effect on the recipient's behavior is the same. The court takes guidance from *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 116 (2d Cir. 1998), where the Second Circuit held that an eviction notice for failure to pay timely rent was an attempt to collect a debt within the meaning of the FDCPA. In that case, the court rejected the notion that a notice required by statute prior to the initiation of a possessory proceeding could not also be an attempt to collect a debt. *Romea* is not precisely on point, because the language of the eviction notices included the phrase "you are required to pay" and was thus closer to an explicit demand for payment, but this is not a fatal distinction, and *Romea*'s reasoning remains instructive. Furthermore, even in the complete absence of any language seeking repayment, the essential character of this type of communication would remain that of an attempt to collect a debt by dispossessing an individual of something of value in satisfaction of that debt.

The court concludes that Greenspoon's conduct as alleged in the complaint was undertaken "in connection with the collection of a debt" and was thus subject to the FDCPA.

### II. Requirements of Nevada Law

Second, Greenspoon argues that the communications at issue were required by the laws of Nevada governing nonjudicial foreclosure proceedings, and thus should not be actionable

under the FDCPA or VCPA. Nevada law does indeed require public recordation of the details of the debt. However, it does not require that, where there are multiple debtors involved, the details about each debtor's case be disclosed to the others. Sending information about Lapan's debt to other timeshare owners was a matter of convenience for Greenspoon, not a requirement of Nevada law. Lapan clarifies in her opposition memorandum that her claims relate only to conduct outside that required by state law.

In a case where state nonjudicial foreclosure law did indeed require sale trustees to behave in ways that would violate the FDCPA, it would become necessary for the court to consider the effect of the Supremacy Clause, but here, there is no such conflict.

### III. Damages

Third, Greenspoon contends that the Complaint alleges no legally cognizable damages. It is true that the Complaint does not allege any pecuniary damages, but the Complaint does allege that Lapan suffered an invasion of her privacy. In Vermont, "[d]amages may be recovered for invasion of privacy, even if the injury suffered is mental anguish alone." *Staruski v. Cont'l Tel. Co. of Vt.*, 581 A.2d 266, 269 (Vt. 1990) (quoting *Faber v. Condecor, Inc.*, 477 A.2d 1289, 1294–95 (N.J. Super. Ct. App. Div. 1984)). Additionally, the FDCPA permits, in the court's discretion, an award of statutory damages upon proof of a violation, without regard to whether the victim of the violation suffered any pecuniary loss as a result of the violation. *See Clomon v. Jackson*, 988 F.2d 1314, 1322 (2d Cir. 1993) (analyzing 15 U.S.C. § 1692k(a)). The Complaint sufficiently alleges damages for invasion of Lapan's privacy and violation of the FDCPA.

### IV. Personal Jurisdiction

Greenspoon asserts that the facts alleged in the Complaint fail to establish a sufficient basis for personal jurisdiction over Greenspoon. Lapan concedes that there is no basis for asserting general jurisdiction over Greenspoon, but maintains that the facts alleged in the Complaint, particularly Greenspoon's mailing of the notices of default and sale to Vermont, were enough for specific jurisdiction.

"Where, as here, specific jurisdiction is asserted, 'minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.'" *Eades v. Kennedy, PC*

*Law Offices*, 799 F.3d 161, 169 (2d Cir. 2015) (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013)).

Greenspoon points to *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014), where the Supreme Court held that "the plaintiff cannot be the only link between the defendant and the forum." But the Court went on to clarify that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties." *Id.* at 1123. The Court also stated that "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* at 1122.

Here, the Complaint alleges that Greenspoon mailed the default and sale notices to Lapan at her address in Vermont, and to all of the other 27 alleged debtors at their respective addresses in other states. This was a single mass mailing undertaken in service of a single purpose, and the court is not persuaded that its individual component letters should be considered in the isolated, piecemeal fashion that Greenspoon urges. The same plan or design that led Greenspoon to mail the notice of default and the notice of sale to Lapan into Vermont also resulted in the delivery of similar letters addressed to the other debtors, which Lapan alleges resulted in her damages. The court concludes that Greenspoon's conduct was sufficient to constitute minimum contacts for the assertion of specific jurisdiction in Vermont.

## CONCLUSION

For these reasons, the motion to dismiss is **DENIED** in all respects.

Dated at Rutland, in the District of Vermont, this ___ day of February, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court